UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYSUN SMITH,

                                        Plaintiff,

        -against-

Correction Officer S. MILLER, individually and in his
official capacity; Correction Officer L. TABOR,
individually and in his official capacity; Correction
Officer D. KOTHARI, individually and in his official
capacity; Correction Officer DIAZ, individually and in
his official capacity; Correction Officer J. RUFINO,
individually and in his official capacity; Sergeant C.
LLORENS, individually and in his official capacity;
Sergeant G. HEAL, individually and in his official
capacity; ONE JOHN DOE NURSE, individually and
in his official capacity; Sergeant DEL BIANCO,
individually and in his official capacity; Correction
Officer A. RIOLLANO, individually and in his
official capacity; M. O'RAFFERTY, individually and
in his official capacity; Correction Officer ALLEN,
individually and in his official capacity; Correction
Officer F. SIOCO, individually and in his official
capacity; JOHN DOE CORRECTION OFFICER;
Captain HARRIS, individually and in his official
capacity.

                                        Defendants.

No. 15-CV-9561 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Raysun Smith, proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C.

§ 1983 action against Defendants Correction Officer ("C.O.") Miller, C.O. Tabor, C.O. Rufino,

C.O. Riollano, C.O. O'Rafferty, Sergeant Del Bianco, C.O. Sioco, C.O. Allen, C.O. Kothari,

Sergeant Llorens, and Captain Harris, alleging that they violated his constitutional rights while

TEMPORARY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10 23 2017

Copies mailed/faxed 10 23 2017
Chambers of Nelson S. Román, U.S.D.J.

he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Presently before the Court is a motion to dismiss portions of Plaintiff's Complaint submitted by Defendants Rufino, Riollano, O'Rafferty, Del Bianco, Sioco, Allen, and Harris.[1] Plaintiff has not submitted an opposition to this motion. For the following reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Allegations

The following facts are derived from the Complaint and are assumed to be true for the purposes of this motion.

#### a. Plaintiff's grievance and the January 5, 2015 incident

On December 17, 2014, while Plaintiff was incarcerated at Fishkill Correctional Facility ("Fishkill"), a corrections officer refused to take Plaintiff's picture and issue him a new identification card because Plaintiff's hair was styled in cornrow braids. (Compl. ¶ 23–27, ECF No. 2.) On December 30, 2014, Plaintiff filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") at Fishkill, claiming that the officer's refusal to issue him an identification card was an act of discrimination. (*Id.* ¶ 28.) Plaintiff was interviewed by the acting IGRC supervisor, Defendant Del Bianco, about the incident on January 5, 2015. (*Id.* ¶ 29–30.) During the interview, Defendant Del Bianco became angry and threatened to place Plaintiff in the Secured Housing Unit ("SHU") if he did not take the cornrow braids out of his hair. (*Id.* ¶ 32.) Defendant Del Bianco further threatened that "he would come up to Plaintiff's housing unit and

---

[1] This motion does not address the claims against Defendants Diaz and Heal, who have yet to be served with the Complaint, or Defendants John Doe C.O and John Doe Nurse, who have yet to be properly added to this action. (Defs.' Mem. Supp. Mot Dismiss (Defs.' Mot."), at 1, n.2, ECF No. 32.) Additionally, the remaining defendants are not moving to dismiss Plaintiff's excessive force and failure to intercede claims against Defendants Miller, Tabor, Kothari, and Captain Harris regarding the incident January 05, 2015. (*Id.* at 1, n.3.)

check to see if Plaintiff had complied and if not he would kick his ass" or send one of his officers to "handle it for him." (*Id.* ¶ 33.) Plaintiff thereafter left the grievance office and returned to his housing unit. (*Id.*)

Upon returning to his housing unit, fearing that he would be sent to the SHU, Plaintiff packed up all of his belongings as a precautionary measure. (*Id.* ¶ 35.) Plaintiff then left his housing unit to attend his daily assigned school program. (*Id.* ¶ 36.) When Plaintiff returned to his housing unit at about three in the afternoon, Defendant Miller confronted Plaintiff and asked him why his property was packed up. (*Id.* ¶ 43.) Plaintiff informed Defendant Miller about Defendant Del Bianco's threat to send Plaintiff to the SHU, to which Defendant Miller responded, "[G]et the fuck out of here, get away from my desk." (*Id.* ¶ 44.) Later that afternoon as Defendant Miller was distributing inmate mail in Plaintiff's housing unit, Defendant Miller instructed Plaintiff to go back to his room and unpack his property. (*Id.* ¶ 47.) Plaintiff responded "O.K" while simultaneously laughing at a piece of mail he had just received. (*Id.*) Defendant Miller, believing that Plaintiff was laughing at him, began yelling at Plaintiff. (*Id.* ¶ 48.) Defendant Miller asked Plaintiff, "Did you just fucking laugh at me?" and instructed Plaintiff to "go to [his] fucking room, unpack [his] shit" and not to come out for the night. (*Id.*)Defendant Miller then escorted Plaintiff back to his room, and "in a threatening manner stood close to Plaintiff's face and stated 'You think this is a game? Do you know where you are at?'" and warned, "I'll be back." (*Id.* ¶ 49.)

Shortly thereafter, Defendant Miller returned to Plaintiff's room with Defendant Tabor. (*Id.* ¶ 53.)While Defendant Tabor stood outside of Plaintiff's room door, Defendant Miller approached Plaintiff, stated "It's not so funny now," and punched Plaintiff in his left eye. (*Id.* ¶ 56–57.) Defendant Tabor then ran into the room and threw Plaintiff to the floor. (*Id.* ¶ 58.)

Plaintiff was subsequently placed in handcuffs. (*Id.* ¶ 59.) Defendants Diaz and Kothari ran into Plaintiff's room and, along with Defendants Miller and Tabor, proceeded to kick and punch Plaintiff in the face, head, and body while he remained restrained on the floor. (*Id.* ¶ 60–61.)

After nearly three minutes, Defendant Sgt. Llorens arrived to Plaintiff's room. (*Id.* ¶ 62.) Defendant Llorens was present for part of the beating and did not intercede. (*Id.* ¶ 66.) Plaintiff was then raised to his feet and placed in a chokehold. (*Id.* ¶ 64.) While in this chokehold, Defendants began beating Plaintiff once again. (*Id.* ¶ 67.) Plaintiff attempted to inform Defendant Llorens that he could not breathe. (*Id.* ¶ 68.) Defendant Llorens replied, "Now you know how Eric Gardner felt," and laughed. (*Id.*)

Defendant Heal arrived while these events were unfolding and also failed to intercede. (*Id.* ¶ 69.) Defendant Heal and the other officers involved in the beating eventually escorted Plaintiff to the Regional Medical Unit ("RMU"). (*Id.* ¶ 70.) The officers continued to beat Plaintiff as they escorted him to the RMU. (*Id.* ¶ 71.)

Once at the RMU, Plaintiff was seen by a nurse—Defendant John Doe Nurse— who refused to document Plaintiff's injuries. (*Id.* ¶ 72–73.) The nurse told Plaintiff, "[T]he officers said nothing happened to you and that's what I'm going to write" and that "even if something did happen to you, you look like you deserved it, so I'll make sure there's no record of it because they did their job." (*Id.* ¶ 73–74.) Plaintiff did not receive medical treatment for his injuries. Plaintiff was thereafter taken to the SHU. (*Id.* ¶ 77.)

On January 8, 2015, Plaintiff was informed that the IGRC had denied the grievance Plaintiff filed regarding the alleged discrimination that took place on December 17, 2014. (*Id.* ¶ 78.) Plaintiff appealed the denial to the facility's superintendent on January 9, 2015. (*Id.* ¶ 79.) The superintendent denied Plaintiff's grievance appeal on January 13, 2015. (*Id.* ¶ 81.)

Thereafter, Plaintiff filed an appeal of the superintendent's decision to the Inmate Grievance Program Central Office Review Committee ("CORC") on January 16, 2015. (*Id.* ¶ 82.) Plaintiff received a denial of his discrimination appeal from CORC on April 1, 2015. (*Id.* ¶ 111.)

On January 11, 2015, Plaintiff filed an additional grievance with the IGRC regarding the excessive use of force, discrimination, and denial of medical treatment that he experienced on January 5, 2015. (*Id.* ¶ 80.) Plaintiff's grievance was denied by the superintendent on February 5, 2015. Plaintiff filed a timely appeal with CORC. (*Id.* ¶ 90.) On April 29, 2015, Plaintiff received a denial of his excessive force appeal to CORC. (*Id.* ¶ 112.)

### b. Acts of Retaliation

After Plaintiff filed his grievance for the events that took place on January 5, 2015, Plaintiff alleges that many Defendants retaliated against him. First, on February 3, 2015, Defendants Allen and the John Doe C.O. entered Plaintiff's cell to take a photograph of Plaintiff's cellmate, Troy Evans. (*Id.* ¶ 83.) Mr. Evans was asleep at the time, however, and the unnamed C.O. asked Plaintiff to wake him. (*Id.* ¶ 84.) Plaintiff responded that waking his cellmate was not his job. (*Id.* ¶ 85.) Defendant Allen, the other officer, and Plaintiff then got into a verbal dispute. (*Id.* ¶ 86.)

The next day, during lunchtime, Defendant Allen opened the food slot in Plaintiff's cell door and intentionally threw two cups of liquid at Plaintiff. (*Id.* ¶ 88.) Defendant Allen then told Plaintiff, "[S]ee what happens when you piss officers off." (*Id.* ¶ 89.) Plaintiff alleges that Allen was clearly referring to both the verbal altercation from the previous day and the January 5th incident. (*Id.* ¶ 90.) Fearing for his safety, Plaintiff filed an official grievance relating to this incident on February 4, 2015. (*Id.* ¶ 92.)

A second incident occurred on February 10, 2015, when Plaintiff alleges he was issued a retaliatory and false inmate misbehavior report by Defendant Rufino that was cosigned by Defendant Sioco. (*Id.* ¶ 94.) In the report, Defendant Rufino alleged that Plaintiff was yelling into the gallery and refused to stop, stating "[G]o ahead, give me a ticket, I don't care." (*Id.* ¶ 95.) At a disciplinary hearing held on February 18, 2015 regarding the hearing, Plaintiff's cellmate admitted both orally and in a written statement that he was the one yelling into the gallery and speaking to Defendant Rufino. (*Id.* ¶ 99–98.) Nonetheless, Plaintiff was found guilty of the allegations. (*Id.* ¶ 99.) Plaintiff subsequently filed an appeal to the superintendent to address the retaliatory ticket on February 8, 2015. Captain Harris denied the appeal and Plaintiff filed an appeal with DOCCS on February 27, 2015. (*Id.* ¶ 100.) Plaintiff's DOCCS appeal was denied on March 10, 2015. (*Id.* ¶ 102.)

On February 22, 2015, Plaintiff also filed a grievance stating that he was being fed his meals off of dirty trays in retaliation to the January 5, 2015 incident. (*Id.* ¶ 104.)

Finally on March 1, 2015, Defendants Riollano and Rufino searched Plaintiff's cell. (*Id.* ¶ 105.) Shortly thereafter, on March 7, 2015, Defendants O'Rafferty and Rufino again searched Plaintiff's cell. (*Id.* ¶ 106.) During this second search, Defendants O'Rafferty and Rufino placed their booted feet onto Plaintiff's pillow and left footprints on Plaintiff's bedding. (*Id.* ¶ 107.) Defendants O'Rafferty and Rufino also spit on Plaintiff's Muslim prayer rug during their search. (*Id.* ¶ 108.) Fearing for his safety and religious freedom, Plaintiff filed a grievance to address the retaliatory actions of Defendant O'Rafferty. (*Id.* ¶ 109.)

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 on December 07, 2015, alleging violations of his First and Eighth Amendment rights. Defendants filed the present

motion to dismiss portions of Plaintiff's Complaint on October 25, 2016. The motions is unopposed.

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (applying same standard to Rule 12(c) motions). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at *679*. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Where, as here, a plaintiff proceeds *pro se*, the court must 'construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].' " *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 499261, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.' " *Id.* (citing *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

**DISCUSSION**

Liberally construed, Plaintiff's Complaint alleges claims under the First and Eighth Amendments. Specifically, Plaintiff suggests First Amendment retaliation claims against Defendants Allen, Rufino, Sioco, O'Rafferty, Riollano, and Harris and free exercise claims against Defendants Rufino and O'Rafferty. Additionally, Plaintiff's Complaint implies an Eighth Amendment failure to protect claim against Defendant Del Bianco. In the present motion, Defendants assert that (1) Plaintiff's claims should be dismissed for failure to exhaust administrative remedies, and (2) Plaintiff failed to state a claim for any constitutional violation. The Court will address each set of claims in turn.

**I.     Exhaustion**

Defendants first contend that several of Plaintiff's claims should be dismissed for failure to exhaust administrative remedies, including (1) Plaintiff's claim against Defendant Allen for throwing two cups of liquid at him; (2) Plaintiff's claim that he was being fed his meals off dirty trays; (3) Plaintiff's claim regarding the search of his cell conducted on March 1, 2015; and (4) Plaintiff's claim regarding the search of cell conducted on March 7, 2015. (Defs.' Mot. at 9.) The Court finds that dismissal of Plaintiff's above claims for failure to exhaust is inappropriate at this time.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, (2002)).

Exhausting all remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,] . . . [t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

A person detained or incarcerated at a DOCCS facility must exhaust all steps of the Inmate Grievance Resolution ("IGR") Program ("IGRP"). *See Robinson v. Henschel*, No. 10-CV-6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014). The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGR committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *See Espinal*, 558 F.3d at 125; *see also* 7 N.Y. Comp. Codes R. & Regs. § 701.5.

In the present case, Defendants argue that several of Plaintiff's retaliation claims should be dismissed because Plaintiff did not properly exhaust all available administrative remedies. In support of this argument, Defendants provide a declaration from the Assistant Director of the Inmate Grievance Program at DOCCS, Jeffrey Hale, along with two exhibits, purporting to demonstrate that Plaintiff never appealed to CORC his grievances relating to the above claims.

(ECF No. 34.) Despite this action being at the motion to dismiss phase of litigation, Defendants assert that the Court may consider their external evidence. This Court, however, disagrees.

Courts typically "may not look beyond the four corners of the complaint in considering a motion to dismiss." *Mayo v. Federal Government*, 558 Fed. App'x 55, 56 (2d Cir. 2014). "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). Where a document is not attached as an exhibit nor incorporated by reference, a court "may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *DiFolco v. MSNBS Cable L.L.C.*, 662 F.3d 104, 111 (2d Cir. 2010)).

In the context of § 1983 claims, courts have taken notice of administrative records outside of the pleadings to determine whether a plaintiff's claims have been properly exhausted. As this Court has noted, however, "in those cases the complaint a) was the standard *pro se* form complaint that has a check-box regarding exhaustion, b) contained allegations clearly stating that the inmate had exhausted his administrative remedies, or c) clearly pointed to the fact that the inmate had, in fact, not exhausted." *Colon v. New York State Dep't of Corr. & Cmty. Supervision*, No 15-CV-7432 (NSR), 2017 WL 4157372, at *5 (S.D.N.Y Sept. 15, 2017). In such cases, the outside records could be considered by the court because they were relied on and/ or incorporated by plaintiff's explicit references to administrative exhaustion in the complaint. Where none of these conditions is satisfied, however, this Court has refused to look beyond the four corners of the complaint for the purposes of a motion to dismiss. *Id.*

In the case at hand, Plaintiff neither incorporated by reference nor relied on the administrative records that Defendants now ask this Court to consider. Although Plaintiff explicitly states that he "exhausted all of his administrative remedies trying to address this violent incident," Plaintiff's allegation of administrative exhaustion refers only to the January 5th incident. (*See* Compl. ¶ 113.) Plaintiff does *not* claim to have exhausted the administrative remedies for any of the claims at issue in Defendants' present motion. Neither does Plaintiff assert he appealed the grievances relating to these claims to the highest level—the superintendent of CORC.

Moreover, Plaintiff was under no obligation to affirmatively plead or demonstrate administrative exhaustion in the Complaint. As the Second Circuit has recognized, "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, *not a pleading requirement.*" *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (emphasis added) (internal citations omitted); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007)("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints"); *contra Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) ("As exhaustion of administrative remedies is a prerequisite to bringing suit, an inmate plaintiff necessarily refers to and relies on documents exhibiting proof of exhaustion. Because the exhaustion issue is an integral part of the prisoner's claims, the Court may refer to materials outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted."), *reconsidered,* No. 04-CV-8850 (RWS), 2008 WL 591230, at *2 (recognizing that the Court's previous opinion "[did] not faithfully capture the subtlety of exhaustion doctrine in the Second Circuit" and that the Court should have addressed non-exhaustion as an affirmative defense).

Therefore, Defendants' records regarding Plaintiff's CORC appeals were neither incorporated by reference nor relied upon by Plaintiff in the Complaint. As such, the Court will not consider Defendants' documentary evidence of non-exhaustion at this juncture.

While it is imperative to resolve the issue of exhaustion as early as possible, if "it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle." *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003). In the present case, it is not clear from the face of the complaint that Plaintiff has failed to exhaust his administrative remedies. Accordingly, dismissal of Plaintiff's claims for lack of exhaustion is improper at this time. The Court now addresses each of Plaintiff's claims individually.

## II. First Amendment Retaliation Claims

The Second Circuit urges caution when addressing retaliation claims brought by prisoners because "claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Therefore, courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Accordingly, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13. To survive a motion to dismiss, a prisoner asserting a retaliation claim must "allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)(quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

Here, Plaintiff alleges that many of the Defendants engaged in acts of retaliation after he filed a grievance reporting Defendants Miller, Tabor, Diaz, Kothari, Heal, and Llorens for their alleged use of excessive force on January 5, 2015.[2] As the Second Circuit has recognized, the filing of prison grievances is a constitutionally protected activity. *Davis*, 320 F.3d at 352. Plaintiff, therefore, meets the first prong of the test for retaliation claims. The Court now turns to whether Plaintiff's individual retaliation claims satisfy the remaining portions of the tripartite test.

### a. Retaliation Claim Against Defendant Allen

Plaintiff fails to raise a plausible claim of retaliation against Defendant Allen. In the Complaint, Plaintiff alleges that on February 4, 2015, Defendant Allen "intentionally threw two cups of liquid at Plaintiff," and stated, "see what happens when you piss officers off." (Compl. 83–89.)

Assuming, *arguendo*, that Defendant Allen's behavior constitutes an adverse action, Plaintiff nonetheless fails to allege a causal connection between his protected activity and Defendant Allen's conduct with sufficient specificity. The alleged causal connection "must be sufficient to support the inference that the speech played a substantial part in the [] adverse [] action." *Walker v. Schriro*, 2013 WL 1234930, at *8 (S.D.N.Y Mar. 26, 2013) (internal quotation marks omitted). Both direct and circumstantial evidence can support such an inference. However, "[e]ven at the motion to dismiss stage, the inmate must allege more than his personal belief that he is a victim of retaliation." *Id.* (internal quotations omitted). "Conclusory allegations of retaliation are not sufficient; the plaintiff must allege facts from which retaliation may

---

[2] Specifically, Plaintiff alleges that Defendants engaged in acts of retaliation based on "the incident of January 5, 2015." Construing *pro se* Plaintiff's Complaint liberally to raise the strongest argument it suggests, the Court reads the Complaint as alleging retaliation against Plaintiff's constitutionally-protected activity of filing a prison grievance regarding the events that transpired on January 5, 2015.

13

plausibly be inferred." *Jabot v. MHU Counselor Roszel*, No. 14-CV-3951 (VB), 2016 WL 6996173, at \*6 (S.D.N.Y Nov. 29, 2016).

Here, Plaintiff fails to state facts from which retaliation may be inferred. "Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim." *Ortiz v. Russo*, No. 13-CV-5317 (ER), 2015 WL 1427247, at \*11 (S.D.N.Y Mar. 27, 2015) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a *pro se* prisoner's retaliation claim against a corrections officer where the alleged basis for retaliation was a letter the prisoner wrote that neither named nor addressed the defendant)). Here, Plaintiff merely makes the conclusory assertion that Defendant Allen's statement, "see what happens when you piss officers off," referred to the January 5th incident and Plaintiff's subsequent grievance.[3] Defendant Allen, however, had no apparent involvement in the January 5th incident and Plaintiff fails to allege any facts that would support a finding that Defendant Allen was personally motivated by Plaintiff's grievance. While there may exist instances in which retaliation claims may be established against defendants who were not personally involved in the original incident, at a minimum, plaintiffs must allege that such defendants have personal knowledge of the protected activity that purportedly motivated the retaliatory conduct. In the present case, Plaintiff neither alleges that Defendant Allen was somehow personally involved in the January 5th incident, or even that Defendant Allen knew of

---

[3] Plaintiff's claim that Defendant Allen was also retaliating against him due to a "verbal dispute" they had on the previous day also fails. While "case law in this Circuit indicates that a prisoner's oral complaints to a correction officer may serve as the basis for a First Amendment retaliation claim," *Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at \*9 (S.D.N.Y Feb 23, 2015), courts have distinguished between verbal complaints and mere confrontations. *See McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at \*27 (S.D.N.Y. Mar. 31, 2016). Verbal confrontations—like the "verbal dispute" between Plaintiff and Defendant Allen, in which Plaintiff was not asserting nor protecting any discernible right—do not constitute protected activity and cannot act as the basis for a retaliation claim.

the incident. Absent such allegations, Plaintiff fails to establish the necessary causal connection between Defendant Allen's adverse action and Plaintiff's protected conduct.

### b. Retaliation claim Against Defendants Rufino, Sioco, and Harris—False Misbehavior Report

Similarly, Plaintiff fails to establish the necessary causal connection between his protected activity—filing a grievance—and the alleged retaliatory conduct of Defendants Rufino, Sioco, and Harris. Plaintiff alleges that Defendant Rufino issued him a retaliatory and false inmate misbehavior report, signed by Defendant Sioco, accusing Plaintiff of yelling into the prison gallery and refusing orders to stop. (Compl. ¶ 94–95.) Despite written admission from Plaintiff's cellmate that it was he who was yelling into the gallery, Plaintiff was found guilty of the allegations at a hearing on February 18, 2015. (*Id.* ¶ 98–99.) Plaintiff claims he was found guilty of the false allegations in retaliation for his grievance relating to the January 5th incident. (*Id.*) Plaintiff appealed the retaliatory false ticket, but his appeal was denied by Captain Harris. (*Id.* ¶ 101.)

Like his allegations against Defendant Allen, Plaintiff's allegations against Defendants Rufino, Sioco, and Harris lack facts from which a retaliatory motive may be inferred. In evaluating whether a causal connection exists between a protected activity and the filing of an allegedly retaliatory false misbehavior report, courts have considered a number of factors, "including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record, (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Ortiz*, 2015 WL 1427247, at *11.

As to the first factor, Plaintiff filed his grievance relating to the January 5th incident on January 11, 2015. (Compl. ¶ 80.) The false misbehavior report was issued on February 10, 2015.

(*Id.* ¶ 94.) While "[t]he Second Circuit has not drawn a bright line defining the outer limits beyond which a temporal relationship is too attenuated to establish causation," "courts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship." *Graham v. Macy's Inc.*, No. 14-CV-3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y Jan. 28, 2016)(internal quotation marks and citations omitted), *aff'd.*, 675 F. App'x 81 (2d Cir. 2017). In the present case, Plaintiff's grievance and the false misbehavior report were separated by only one month. The temporal proximity between Plaintiff's protected activity and the alleged retaliatory action could thus support an inference of retaliatory intent.

The remaining factors, however, do not support an inference of retaliation. The Complaint is silent regarding Plaintiff's previous disciplinary record, Plaintiff was found guilty at a subsequent hearing, and Plaintiff does not allege any statements by Defendants regarding their motivation. Moreover, Defendants Rufino, Sioco, and Harris do not appear to have been personally involved in the January 5th incident and Plaintiff fails to allege that Defendants Rufino, Sioco, and Harris even knew of the incident and Plaintiff's subsequent grievance. Plaintiff, therefore, fails to raise a retaliation claim against Defendants Rufino, Sioco, and Harris with regards to the false misbehavior report.

### c. **Retaliation claims against Rufino, Riollano, and O'Rafferty—Cell searches**

Plaintiff next alleges that Defendants Rufino, Riollano, and O'Rafferty engaged in retaliation by searching his cell on two occasions—first on March 1, 2015 and again on March 7, 2015. (Compl. ¶ 105–07.) Plaintiff further alleges that in the course of the second search, Defendants Rufino and Riollano placed their booted feet on his pillow and blanket and spit on his Muslim prayer rug. *Id.* Plaintiff refers to these searches as "retaliatory actions" in the Complaint, but does not specify what protected conduct Defendants were retaliating against.

Liberally construed, Plaintiff's claim appears to allege that Defendant Rufino, Riollano, and O'Rafferty retaliated against Plaintiff due to his appeal of the false misbehavior report issued by Defendant Rufino on February 10, 2015.[4]

However, Plaintiff's allegations are insufficient to raise a retaliation claim against Defendants Rufino, Riollano, and O'Rafferty. Although appeals of misbehavior reports—like the filing of grievances—constitute protected conduct, *Wood v. Cty. of Sullivan*, No. 00-CV-4339 (DLC), 2002 WL 31158822, at *10 (S.D.N.Y Sept. 27, 2002), Plaintiff's allegations do not satisfy the remaining elements of a retaliation claim.

Specifically, the alleged conduct of Defendants Rufino, Riollano, and O'Rafferty does not amount to an adverse action. An adverse action is any action "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.* at 353 (internal quotation marks omitted). Otherwise, the act is "*de minimis* and therefore outside the ambit of constitutional protection." *Id.* (internal quotation marks omitted). "In making this determination, the court's inquiry must be 'tailored to the different circumstances in which retaliation claims arise,' bearing in mind that '[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis*, 320 F.3d at 353 (quoting *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001)).

Here, Plaintiff accuses Defendants Rufino, Riollano, and O'Rafferty of conducting retaliatory cell searches. "The Second Circuit has not addressed whether a cell search can constitute an adverse action for purposes of a First Amendment retaliation claim." *Mateo v.*

---

[4] While the Court notes that the Complaint could also be read as alleging that Defendants Rufino, Riollano, and O'Rafferty were retaliating against Plaintiff's grievance regarding the January 5th incident, such a claim would fail. Defendants Rufino, Riollano, and O'Rafferty were not personally involved in the January 5th incident and Plaintiff fails to allege any other causal connection between their actions and that grievance. Defendant Rufino, however, issued the false misbehavior report and participated in both searches, thus establishing a greater causal connection between his actions and Plaintiff's protected conduct.

*Alexander*, No. 10-CV-8427 (LAP) (DCF), 2012 WL 864805, at *4 (S.D.N.Y Mar. 14, 2012). However, numerous district courts in this circuit have recognized that while searches alone may not be actionable, prisoners "can assert a retaliation claim for [defendants'] conduct in conjunction with the cell search." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. April 22, 2005); *see also Steward v. Richardson*, No. 15-CV-9034 (VB), 2016 WL 7441708, at *5 (S.D.N.Y. Dec. 27, 2016) ("Considered collectively, as they ought to be, plaintiff's allegations of retaliatory cell searches and destruction of his property are sufficient to state a claim.").

Plaintiff does not allege that Defendant Riollano engaged in any retaliatory action beyond the search of his cell. (*See* Compl. ¶ 105–07.) Because cell searches alone have not been found actionable as adverse actions in this Circuit, the retaliation claim against Defendant Riollano is dismissed.

Defendants Rufino and O'Rafferty, however, are alleged to have stepped on Plaintiff's bedding and spit on Plaintiff's Muslim prayer rug while conducting their search. (*Compl.* ¶ 107–8.) The Court, therefore, considers the cell search in conjunction with Defendants' other conduct. Even in conjunction, however, Defendants' acts do not constitute an adverse action sufficient to support Plaintiff's retaliation claim. Courts in this circuit have typically only found cell searches to constitute adverse actions when they involve significant deprivations or destruction of property. *See, e.g., Smith v. City of New York*, No. 14-CV-5927, 2017 WL 2172318, at *4 (S.D.N.Y May 16, 2017)("[T]he confiscation or destruction of property taken at the time of searches may constitute an adverse action" (internal quotation marks omitted)); *Smith v. City of New York*, No. 03-CV-7576, 2005 WL 1026551, at *3 (S.D.N.Y May 3, 2005) ("[R]etaliatory destruction of a prisoner's personal property has previously been found substantial enough to

qualify as an adverse action"). Absent such deprivations, courts have been reluctant deem cell searches adverse actions. *See Shannon v. Venettozzi*, No. 13-CV-4530 (KBF), 2015 WL 114179, at *6 (S.D.N.Y. Jan 8, 2015) (recognizing that "courts in this district have found that destruction of personal property is often an adverse action, but minor cases of withholding property are typically *de minimis*"), *aff'd in part, vacated in part,* 670 Fed App'x 29 (2d Cir. 2016); *Smith,* 2017 WL 2172318, at *4 (ruling that Defendant's act of throwing out an inmate's food and bed linen was not a substantial enough injury to constitute an adverse action because it would not deter a similarly situated individual of ordinary firmness form exercising his or her constitutional rights); *Fann v. Arnold*, No. 14-CV-6187 (FGP), 2016 WL 2858927, at *2 (W.D.N.Y. May 16, 2016) (ruling that the plaintiff's allegation that "all of his property was thrown in the shower" was a *de minimis* act of retaliation").

Here, the alleged retaliatory actions of Defendants Rufino and O'Rafferty during the cell search—while inappropriate and harassing—did not deprive Plaintiff of his property nor cause its destruction. Accordingly, their actions are *de minimis* and do not constitute an adverse action. Plaintiff's retaliation claims against Defendants Rufino and O'Rafferty are therefore dismissed.

### d. Retaliation Claims Against Unnamed Defendants—Dirty Trays

For his final retaliation claim, Plaintiff alleges that he was being fed meals off of dirty trays "in retaliation for the incident of January 5, 2015." (Compl. ¶ 104.) Plaintiff fails, however, to identify the parties responsible for these retaliatory actions or even name a "John Doe" defendant. Without more specific factual allegations, no causal connection between Plaintiff's protected conduct and the retaliatory acts may be inferred. Plaintiff's retaliation claim regarding the dirty trays is therefore dismissed. *See Flynn v. Ward*, No. 15-CV-1028, 2016 WL 1357737, at

*14 (N.D.N.Y. Apr. 5, 2016) (ruling that "Plaintiff's failure to identify the parties responsible for the [retaliatory] incidents requires the Court to dismiss these retaliation claims").

## II.    First Amendment Free Exercise Claim

Plaintiff's allegation that he feared for his religious freedom after Defendants Rufino and O'Rafferty spit on his Muslim prayer rug during the March 7, 2015 search of his cell fails to raise a First Amendment Free Exercise claim.

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience." *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). However, the Second Circuit has acknowledged that, "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Saluhuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal citations and alterations omitted). Accordingly, the First Amendment protection afforded to inmates must be balanced with "the interests of prison official charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588.

To establish a Free Exercise claim, a plaintiff must typically show that a sincerely held religious belief was substantially burdened by conduct that was not reasonably related to a legitimate penological interest. *Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL

3938344, at *5 (S.D.N.Y July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). For the purposes of this analysis, a "substantial burden" exists when "the state put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (internal quotation marks omitted). However, the Second Circuit has questioned the vitality of the "substantial burden" test following the concern articulated by the Supreme Court in *Employment Division v. Smith*, 494 U.S. 872 (1990), that application of the test "embroils courts in the unacceptable business of evaluating the relative merits of differing religious claims." *Holland*, 758 F.3d at 220 (internal quotation marks omitted).

While this Court recognizes that "[i]t is not within the judicial ken to question the centrality of a particular beliefs or practice to a faith," such a concern does not apply to the present action. *See Smith*, 494 U.S. at 887 (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 686 (1989)). Here, Plaintiff has failed to allege *any* burden on his religious beliefs. In such cases— where the significance or centrality of a religious practice is not at issue—courts in this circuit have engaged in the "substantial burden" analysis. *See Colliton v. Bunt*, 15-CV-6580 (CS), 2016 WL 7443171, *11, n. 15 (S.D.N.Y. Dec. 27, 2016) (recognizing that the concerns articulated in *Holland* did not apply where the plaintiff failed to allege any burden on his religious beliefs), *appeal dismissed*, (Jan. 4, 2017); *Newdow v. Peterson*, 753 F.3d 105, 109-10 (2d Cir. 2014) (affirming the district court's dismissal of a Free Exercise claim where atheist plaintiffs failed to identify how the placement of "In God We Trust" on U.S. currency burdened their religious activity). Because Plaintiff makes no allegations regarding *how* Defendants' actions pressured him to modify his behavior or violate his beliefs, he fails to state a Free Exercise Claim against Defendants Rufino and O'Rafferty.

## III.  Eighth Amendment Claim

Plaintiff's Complaint, liberally construed, also suggests a possible Eighth Amendment claim against Defendant Del Bianco for inciting or encouraging the assault that transpired on January 5, 2015. Plaintiff alleges that on January 5, 2015, Defendant Del Bianco, the acting IGRC supervisor, "became angry and irate and began screaming and threatening him," saying that he was going to "kick his ass" and "if [he] could not make it up to Plaintiff's housing unit that day, then one of his officers would come up there and handle it for him." (Compl. ¶ 33.) Further, Plaintiff claims that shortly before he was assaulted in his cell, Defendant Miller—the same Defendant who is alleged to have initiated the assault on Plaintiff—stated he was going to call Defendant Del Bianco. (Compl. ¶ 41.)

To establish an Eighth Amendment claim, a prisoner must satisfy a two-part test, composed of an objective and subjective element. *See, e.g., Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). Objectively, the conduct at issue, evaluated "in light of contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted), must be "sufficiently serious . . . to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1996) (internal quotation marks omitted). The subjective element requires the prison official accused of violating the Eighth Amendment to have possessed a "wanton state of mind" in carrying out the conduct at issue. *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996) (internal quotation marks omitted).

Further, courts have allowed Eighth Amendment claims against prison officials who have not directly inflicted physical injuries on prisoners, but whose "deliberate indifference" to a "substantial risk of serious harm" nonetheless contributed to such injury. *See, e.g., Randle v. Alexander*, 960 F. Supp. 2d 457, 472 (S.D.N.Y. 2013) ( finding allegations that a prison guard

forced two inmates to fight each other sufficient to raise both excessive use of force and failure

to protect Eighth Amendment claims against that guard); *Bouknight v. Shaw*, No. 08-CV-5187

(PKC), 2009 WL 969932, at \*4 (S.D.N.Y. Apr. 6, 2009) (recognizing that "a prisoner can state a

claim under the Eighth Amendment against a corrections officer who spreads malicious rumor

about him if the rumors incited other inmates to assault [the plaintiff] . . . , thereby placing him at

grave risk of physical harm" (internal quotation marks omitted)); (*Quezada v. Fischer*, No. 9:13-

CV-0086 (MAD)(TWD); 2016 WL 1118451, at \*2 (N.D.N.Y. Mar. 22, 2016) (adopting

Magistrate Judge's finding that a correction officer's "instigation and encouragement [of other

correction officers] to physically assault [p]laintiff, coupled with the alleged occurrence of the

ensuing beating on him, was sufficient to state an Eighth Amendment harassment claim").

    Here, Plaintiff suggests that Defendant Del Bianco intentionally incited and encouraged a

violent attack on him by other prison guards. Such an allegation clearly satisfies the first—

objective—prong of the Eighth Amendment inquiry; there is no question that instructing or

encouraging other guards to attack an inmate poses an objectively serious risk of harm.

Plaintiff's allegations also easily satisfy the second—subjective—portion of the test, as

"[i]ntentionally exposing an inmate to the risk of harm . . . with no penological purpose is

indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm

the inmate at worst." *Mirabella v. Correction Officer O'Keenan*, No. 15-CV-142S, 2016 WL

4678980, at \*4 (W.D.N.Y. Sept. 7, 2016) (internal quotation marks omitted); *see also Farmer v.*

*Brennan*, 511 U.S. 825, 835 (1994) ("While . . deliberate indifference entails something more

than mere negligence, the cases are also clear that it is satisfied by something *less* than acts or

omissions for the very purpose of causing harm or with knowledge that harm will

result."(emphasis added)); *Randle*, 960 F. Supp. 2d at 474 (S.D.N.Y. 2013)(ruling that a forced

fight between inmates "serve[d] no legitimate penological purpose and reflect[ed] indifference to inmate safety, if not malice toward those forced to engaged in the illicit violence"). Thus, Plaintiff has successfully raised an Eighth Amendment claim against Defendant Del Bianco and dismissal is inappropriate at this time.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part. The First Amendment retaliation claims against Defendants Allen, Sioco, Rufino, Riollano, O'Rafferty, and Harris are dismissed without prejudice. The First Amendment Free Exercise claims against Defendants Rufino and O'Rafferty are also dismissed without prejudice. Because no claims remain against Defendants Allen, Sioco, Rufino, Riollano, O'Rafferty, and Harris, they are dismissed from this action. Plaintiff's Eighth Amendment claims against Defendants Miller, Tabor, Diaz, Kothari, Heal, LLorens, and Del Bianco remain.

The remaining Defendants are directed to file their answer on or before November 13, 2017. The parties are further directed to appear for an in-person Initial Pretrial Conference scheduled for November 16, 2017 at 11:45am before Judge Román and complete a Case Management Plan and Scheduling Order, which should be submitted to chambers prior to the conference. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 32.

Dated:    October 23, 2017                    SO ORDERED:
            White Plains, New York

                                              NELSON S. ROMÁN
                                            United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-------------------------------------------------------------x

                        Plaintiff(s),       **CIVIL CASE DISCOVERY PLAN
                                       AND SCHEDULING ORDER**

    - against -

                        Defendant(s).        _____ CV _____ (NSR)

-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by _____.

4.      Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than

       _____.

7.      Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.     Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

**14.    ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge